## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| WELLS FARGO FINANCIAL LEASING, INC., | )<br>)<br>) |
| Appellant, | )<br>) No. 05 CV 129 |
| v. | ) |
| COMDISCO, INC., | ) HONORABLE DAVID H. COAR<br>)<br>) |
| Appellee. | ) |

### MEMORANDUM OPINION AND ORDER

Before this court is Appellant Wells Fargo Financial Leasing, Inc.'s ("WFFL's") appeal from the Bankruptcy Court decision in United States Bankruptcy Case No. 01 B 24795. That decision denied WFFL's Motion to Reconsider Disallowance of Claim No. 2022 and entered judgment in favor of Appellee, Comdisco, Inc. ("Comdisco"). This Court has jurisdiction to determine this appeal pursuant to Title 28, Section 158(a)(1) of the United States Code. For the following reasons, this Court reverses the judgment below and remands the case to the Bankruptcy Court for proceedings consistent with this opinion.

### I. STATEMENT OF THE ISSUES PRESENTED

The two issues on appeal are (1) whether the Bankruptcy Court erred in refusing to consider evidence in support of WFFL's motion to reconsider the disallowance of its claim on the basis of newly discovered evidence, and (2) whether the Bankruptcy Court erred by applying an improper legal standard when ruling on WFFL's motion to reconsider on the basis fraud,

misrepresentation, or other misconduct. Both issues arise under Section 502(j) of the Bankruptcy Code, which governs the reconsideration of claims that have been disallowed, and Rule 60(b) of the Federal Rules of Civil Procedure, which governs relief from final judgment.

## II. APPLICABLE STANDARD OF REVIEW

The District Court reviews a Bankruptcy Court's grant or denial of relief under Bankruptcy Code § 502(j) and Federal Rule of Civil Procedure 60(b) for abuse of discretion. See In re Williams, 276 B.R. 899, 906 (C.D. Ill. 1999); see also In re Childress, 851 F.2d 926, 927 (7th Cir. 1988). Under this standard of review, "the relevant inquiry is . . . whether any reasonable person could agree with the [bankruptcy] court." In re Morris, 223 F.3d 548, 554 (7th Cir. 2000) (citation omitted) (alteration in original). "In general terms, a court abuses its discretion when its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." In re KMart Corp., 381 F.3d 709, 713 (7th Cir. 2004). Accord Salgado by Salgado v. General Motors Corp., 150 F.3d 735, 739 & n.4 (7th Cir. 1998) (explaining that the reviewing court must "scrutinize the [lower] court's determination to ensure that it invoked the correct legal standards and that its findings of fact are not clearly erroneous."). The standard is extremely deferential, but not "toothless." Land v. Chicago Truck Drivers, Helpers and Warehouse Workers Union, 25 F.3d 509, 515 (7th Cir. 1994); see also Castro v. Board of Education, 214 F.3d 932, 934 (7th Cir. 2000). In reviewing the evidence, the court must accept as true the movant's undenied allegations. Tobel v. City of Hammond, 94 F.3d 360, 362 (7th Cir. 1996).

## III.   FACTUAL AND PROCEDURAL BACKGROUND

<u>The Sale-Leaseback Transaction between WFFL and Comdisco</u>

In November and December 1994, WFFL and Comdisco entered into a commercial transaction—a sale-leaseback of computer equipment.  WFFL purchased the equipment from Comdisco through a third party, and Comdisco leased the equipment back from WFFL.

The transaction was structured so that WFFL would receive tax depreciation benefits.  The transaction also included an Indemnity Agreement in which Comdisco promised to indemnify WFFL if WFFL did not receive the expected tax benefits because Comdisco breached any of the representations it made in the various transaction documents.  Finally, the transaction included a Consent and Agreement, in which Comdisco promised to indemnify WFFL if its representations were not correct.

<u>The Double Sales</u>

Two of the computers involved in the sale-leaseback are at issue in this appeal: the "ADP Computer" and the "Southwestern Bell Computer."   Unbeknownst to WFFL, Comdisco "double sold" these two computers.[1]  This Court will forgo the details in favor of a generalized description of the event: Although WFFL was supposed to receive good title to the ADP and Southwestern Bell computers, Comdisco actually sold the computers to WFFL *and to* other

---

[1] The Bankruptcy Court found that Comdisco actually double-sold the ADP Computer and prematurely sold the Southwestern Bell Computer.  For convenience, however, the parties and this Court refer simply to "double sales."

companies. This clouded WFFL's title, and breached Comdisco's representations of good title and duty to defend WFFL's title.

Once Comdisco discovered the double sales, it worked, largely unsuccessfully, to rectify the problem and learn of its source. Yet Comdisco never told WFFL about the double sales. Instead, it continued to send WFFL reports indicating that WFFL had good title to the computers.

Comdisco's Bankruptcy

Comdisco entered Chapter 11 bankruptcy in 2001. As a protective measure, WFFL filed a proof of claim, Claim No. 2202, based upon the Indemnity Agreement, even though at that time WFFL did not know that Comdisco breached any of the representations it made as a part of the sale-leaseback transaction. Comdisco objected to the proof of claim, and WFFL did not contest the objection. Based upon Comdisco's uncontested objection, the Bankruptcy Court disallowed Claim No. 2202 in July 2002.

IRS Litigation Against WFFL

Between 1999 and 2002, the IRS audited WFFL and challenged deductions related to WFFL's purchase of computer equipment from Comdisco. During the process, the IRS issued Revenue Agent's Reports questioning the deductions. The reports, however, did not indicate that the deductions were improper because Comdisco double-sold or committed any other conduct regarding computer equipment. WFFL, believing that it had good title to the equipment

and that the deductions were proper, protested.  This led to several proceedings within the IRS and the United States Tax Court.

In June 2003, the IRS offered to settle the dispute if WFFL agreed to pay substantial additional taxes.  WFFL, again believing it had good title and had made proper deductions, rejected the settlement offer.

Meanwhile, the IRS had been investigating Comdisco's practices.  In August 2003, the IRS filed a Second Amendment to Answer in the Untied States Tax Court litigation involving WFFL's 1994 tax year.  The IRS alleged that Comdisco double-sold some of the computers, including the ADP and Southwestern Bell computers.  With this information, WFFL learned for the first time that Comdisco may have breached representations made in the sale-leaseback transaction, and that the breaches caused WFFL to lose the tax benefits it expected from the transaction.  These allegations by the IRS, if true, meant that WFFL had a valid claim against Comdisco under the Indemnity Agreement.

WFFL spent three months investigating the allegations. WFFL asked Comdisco to tender a defense to the IRS litigation, but Comdisco refused.  Based upon its investigation, WFFL settled the tax litigation with the IRS by accepting the same offer it had earlier rejected.


Bankruptcy Court Proceedings

On December 24, 2003, WFFL filed a Motion to Reconsider Disallowance of Claim No. 2202—the claim the Bankruptcy Court disallowed over no objection in July 2002. See 11 U.S.C. § 502 (permitting creditors to seek reconsideration of claims for cause). WFFL's stated

grounds were: (1) newly discovered evidence and (2) fraud, misrepresentation, and misconduct.[2] WFFL stated that until the IRS revealed Comdisco's misconduct, WFFL could not have known that it had a valid claim under the Indemnity Agreement and a reason, therefore, to pursue its proof of claim in the Comdisco bankruptcy.

The Bankruptcy Court (Judge Bruce W. Black, presiding) heard arguments on the motion on January 22, 2004. On February 26, 2004, the court issued a preliminary oral ruling indicating that it was disinclined to grant WFFL's motion on the basis of the newly discovered evidence as it did not see any merit in the claim. The court did, however, set an evidentiary hearing for the portion of the motion alleging fraud, misrepresentation, and misconduct.

The evidentiary hearing took place on August 2 and 3, 2004. During that hearing, the Bankruptcy Court heard testimony from two WFFL witnesses and five Comdisco witnesses. The court also received deposition testimony and documentary evidence.

On November 17, 2004, the Bankruptcy Court issued a final oral ruling. The court relied on the witness testimony in August to find that the double sales in fact occurred and that Comdisco never told WFFL about the sales even after discovering them. Nonetheless, the court concluded, WFFL had not proven fraud, because the court found credible the testimony of Comdisco's witnesses that the double sales were not intentional, and because the court did not believe that Comdisco's disclosure of those sales "would have changed the course of [the parties'] transaction in any way." Id. For these reasons, and the for reasons the Bankruptcy

---

[2] Both are grounds for relief under Federal Rule of Civil Procedure 60(b), made applicable to bankruptcy cases by Bankruptcy Rule 9024. See Fed. R. Civ. P. 60(b)(2), 60(b)(3); Fed. R. of Bankr. P. 9024.

Court stated on the record in February, the court denied WFFL's motion in its entirety and entered judgment in favor of Comdisco. This appeal followed.

## IV. ANALYSIS OF THE DECISION BELOW

WFFL contends that the Bankruptcy Court abused its discretion by refusing to consider evidence in support of its Federal Rule of Civil Procedure 60(b)(2) motion and by ignoring the proper legal standard for relief under Federal Rule of Civil Procedure 60(b)(3). Comdisco advances a host of arguments in opposition that this Court will address below as necessary.

First, however, a brief explanation as to why Federal Rule of Civil Procedure 60 applies to WFFL's claim, a notion Comdisco inexplicably disputes. Section 502(j) of the Bankruptcy Code provides that "[a] claim that has been allowed or disallowed may be reconsidered for cause." 11 U.S.C. § 502(j). Because the Bankruptcy Code does not define "cause," courts find the standard for reconsideration under Section 502(j) in Rule 60, which governs relief from judgment. See Hawxhurst v. Pettibone Corp., 40 F.3d 175, 179 (7th Cir. 1994) ("Federal Rule of Civil Procedure 60 governs motions for reconsideration of an order disallowing a claim against the debtor's estate."). The Federal Rules of Bankruptcy Procedure, in fact, incorporate by reference Rule 60. See Fed. R. Bankr. P. 9024 (stating that, with exceptions not applicable to the instant case, "Rule 60 F. R. Civ. P. applies in cases under the Code"). [3]

---

[3] Thus, in asserting that Section 502(j) is the correct standard to apply in this case, and not Rule 60, Comdisco fundamentally misunderstands that the two provisions are not alternatives; rather, Rule 60 *supplies* the standard for reconsideration under Section 502(j). See Hawxhurst, 40 F.3d at 179; Williams, 276 B.R. at 906 ("Courts . . . have consistently held that Fed. R. Civ. P. 60, incorporated by reference into Bankruptcy Rule 9024, sets forth the standards for reconsideration under § 502(j)"); In re Watkins, 240 B.R. 735, 739 (Bankr. C. D. Ill. 1999) (same). Likewise, Comdisco is incorrect in asserting that WFFL "waived" any arguments under

### A. Newly Discovered Evidence

The first question is whether the Bankruptcy Court erred in refusing to consider evidence in support of WFFL's motion to reconsider on the basis of newly discovered evidence.

Rule 60(b)(2) of the Federal Rules of Civil Procedure provides for relief from a final judgment due to "newly discovered evidence which by due diligence could not have been discovered" earlier. Fed. R. Civ. P. 60(b)(2). In order to have its claim reconsidered, WFFL was to show that: (1) The evidence was discovered following the Bankruptcy Court's July 2002 decision to disallow Claim No. 2202; (2) Due diligence on the part of the movant (WFFL) to discover the new evidence is shown or may be inferred; (3) The evidence is not merely cumulative or impeaching; (4) The evidence is material; and (5) The evidence is such that reconsideration of the claim would probably produce a new result. See In re Chicago, Milwaukee, St. Paul & Pacific Railway Co., 78 F.3d 285, 293-94 (7th Cir. 1996). If WFFL failed to meet any of these prerequisites, it could not prevail on its motion. Id.

WFFL filed its Rule 60(b)(2) motion to reconsider in December 2003. The Bankruptcy Court did not set an evidentiary hearing on the question of newly discovered evidence as it did on the question of fraud. See Tr. of Proceedings before the Hon. Bruce W. Black on 1/22/04 ("1/22/04 Tr.") at 24 (Judge Black stating that "I don't believe from having thought about the matter and read the papers, that it will be necessary for me to hear evidence to resolve the

---

Section 502(j) by not mentioning Section 502(j) or the legal standard applicable to Section 502(j) in the argument section of its brief. WFFL properly has argued its appeal based on the standard in Rule 60, which *is* the standard applicable to Section 502(j). See id. Finally, in asserting that Rule 60 applies only to claims that have been litigated (WFFL's was not), Comdisco misreads a case in this District, see Appellee's Br. at 9 (citing In re Excello Press, Inc., 83 B.R. 539, 541 (Bankr. N.D. Ill. 1988)), and relies on cases in other circuits that misread still other cases. See, e.g., id. (citing In re Gomez, 250 B.R. 397, 401 (Bankr. M.D. Fla. 1999)).

motion."). Instead, the court issued a preliminary ruling in February 2004 indicating that it would not grant the Rule 60(b)(2) motion, and followed up with a ruling in November 2004 that incorporated and made final the decision stated on the record in February. See 11/17/04 Tr. at 8. On the question of newly discovered evidence, the Bankruptcy Court's ruling, in its entirety, was this:

> "The second theory for granting the motion to reconsider is newly discovered evidence under Rule 60(b), and the long and short of that is *there's simply nothing new here* in the way of evidence that's been discovered by anybody. The Internal Revenue Service and the tax court have interpreted the *evidence that's been here from the beginning* in a particular way, but that's not new evidence. And so that basis for the motion is . . . rejected."

2/2/6/04 Tr. at 25 (emphases added).

Although the Bankruptcy Court did not allow evidence on the question of newly discovered evidence, such evidence came to light during the evidentiary hearing on WFFL's Rule 60(b)(3) motion. The evidence, coupled with the arguments WFFL made in support of its motion during oral arguments in January, established that WFFL could not have learned of Comdisco's double sales until the IRS made its allegations in August 2003, as the allegations were based upon internal Comdisco records to which WFFL did not have access. Likewise, the evidence established that WFFL could not have proven those allegations until discovery on the 60(b)(3) motion, when WFFL finally had access to those records and to Comdisco witnesses. Specifically, WFFL introduced evidence not previously available and testimony not previously given that: Comdisco double-sold the ADP and Southwestern Bell computers; Comdisco employee Patricia Maille discovered the double sales and told the management official who was responsible for correcting the problem; Comdisco's policy was to never double-sell equipment but to respond honestly and "do the right thing" if it did, see Test. of Robert Snyder, 8/3/03 Tr. at

196; a senior operations manager at Comdisco could not recall learning of the mistake from employees below him, as was company policy; Comdisco never told WFFL about the double sales; and, even after Comdisco learned of the double sales, it did not correct location reports it sent to WFFL indicating that WFFL owned the two computers.

This evidence meets the prerequisites of Rule 60(b)(2). First, WFFL established that it discovered the evidence in August 2003, more than a year after the Bankruptcy Court disallowed its claim. Second, a court can infer that, despite any due diligence WFFL may have exercised, WFFL was unable to discover the evidence any earlier without Comdisco's admission of the double sales or access to internal Comdisco records. Third, the evidence is not merely cumulative or impeaching. Fourth, the evidence is material, as it indicates that WFFL had a claim to pursue based on its Indemnity Agreement with Comdisco and its loss of the tax benefits that the Bankruptcy Court acknowledged were the reason for the parties' transaction. See 11/17/04 Tr. at 5. Fifth, the evidence is such that reconsideration of the claim would probably produce a new result, also for the reason stated above. See Chicago, Milwaukee, St. Paul & Pacific Railway Co., 78 F.3d at 293-94.

Despite making a factual finding that Comdisco double-sold the computers without telling WFFL, the Bankruptcy Court maintained its initial position that there was no new evidence to consider. The court did not explain how the evidence of Comdisco's sales "was here from the beginning" for WFFL. 2/2/6/04 Tr. at 25. Nor did the court mention in its November 2004 ruling that WFFL had submitted post-evidentiary hearing briefs requesting the court to reconsider its preliminary ruling. Given the evidence that emerged during the evidentiary hearing—evidence that the Bankruptcy Court's final ruling reflects—it was greater

error for the court to ignore WFFL's post-hearing reconsideration request than it was for the court to decide that an evidentiary hearing on the 60(b)(2) motion was not required in the first place. The court's failure to amend its preliminary ruling to account for the new evidence that it recognized, in substance if not in name, was an abuse of discretion.

In arguing against this conclusion, Comdisco does not dispute that the evidence of the double sales was new to WFFL. Instead, Comdisco argues that WFFL knew from the beginning that *it was being audited by the IRS*. Since WFFL knew that the IRS was examining the sale-leaseback transaction, Comdisco maintains, WFFL should have "acted with the most basic diligence" and preserved any possible indemnity claim by filing a response to Comdisco's objection to WFFL's proof of claim. Appellee's Br. at 10. This lack of diligence, Comdisco argues, merits denial of WFFL's 60(b)(2) motion.

This argument is spurious. Comdisco cites no authority that due diligence consists of pursuing a proof of claim, even without knowledge of its basis, simply because an audit is taking place. Moreover, Comdisco conceded that the IRS reports WFFL received during the audit "didn't say anything about double-selling of machines." 1/22/04 Tr. at 40. This concession supports WFFL's argument that the IRS was challenging WFFL's deductions related to the sale-leaseback transaction on a ground unrelated to double sales; that the IRS did not identify a problem with Comdisco's representations until August 2003; and that simply having a deduction disapproved by the IRS would not allow recovery under the Indemnity Agreement. WFFL's proof of claim would have merit only if Comdisco breached one of its *representations* to WFFL.[4]

---

[4] Comdisco further argues that WFFL also had knowledge of a U.S. tax court opinion denying deductions that a WFFL affiliate took after a transaction with Comdisco. See Andantech, LLC et al. v. Commissioner, Nos. 15532-98, 4277-00, 6348-00, 83 T.C.M. (CCH)

Comdisco also argues that WFFL failed to establish that the allegedly new evidence would have changed the outcome of WFFL's claim. As an example, Comdisco observes that WFFL still might have been audited or forced to settle with the IRS. This argument misstates WFFL's burden on a 60(b)(2) motion. WFFL was required to show that the newly discovered evidence was such that *a new decision on its motion* would produce a new result. See Chicago, Milwaukee, St. Paul & Pacific Railway Co., 78 F.3d at 293-94. The motion here involves reconsidering the disallowance of WFFL's claim. There are only two probable results from the disposition of this motion: a decision by the court to reconsider the claim or a decision by the court not to reconsider the claim. Thus, whether WFFL would ultimately succeed in the bankruptcy proceedings or be subject to an IRS audit or settlement is irrelevant. WFFL need only show that its new evidence would likely result in the court's decision to reconsider the disallowance of WFFL's claim.

In sum, the record contains evidence on which the Bankruptcy Court should have relied to produce a more rational result. See KMart Corp., 381 F.3d at 713. Accordingly, the court erred in denying WFFL's newly discovered evidence motion on the pleadings and, perhaps more importantly, in subsequently disregarding the evidence of newly discovered evidence when it ultimately was presented.

---

1476 (2002). But the case, Comdisco concedes, involved a sham transaction. It had nothing to do with double sales or breaches of warranty. It does not, therefore, constitute evidence in the instant case that WFFL should have known about "from the beginning."

### B. Fraud, Misrepresentation, or Other Misconduct

The second question is whether the Bankruptcy Court erred by applying an improper legal standard when ruling on WFFL's motion to reconsider on the basis fraud, misrepresentation, or other misconduct.

Rule 60(b)(3) of the Federal Rules of Civil Procedure provides for relief from a final judgment due to "fraud . . . misrepresentation, or other misconduct of an adverse party." Fed. R. Civ. P. 60(b)(3). In order to have its claim reconsidered, WFFL had to prove by clear and convincing evidence that: (1) WFFL had a meritorious claim, but (2) because of the fraud, misrepresentation or misconduct of Comdisco, (3) WFFL was prevented from fully and fairly presenting its case. See Lonsdorf v. Seefeldt, 47 F.3d 893, 897 (7th Cir. 1995). "[Rule] 60(b)(3) applies to both intentional and unintentional misrepresentations." Id. Furthermore, in resolving a Rule 60(b)(3) motion, "[a] determination of whether the alleged misrepresentation altered the result of the case is unnecessary because Rule 60(b)(3) protects the fairness of the proceedings, not necessarily the correctness of the verdict." Id. A court "must weigh the competing policy interests of the finality of judgment against fundamental fairness in light of all of the facts." Id.

The Bankruptcy Court's ruling abandons the standard outlined above. The court found that, even though Comdisco double-sold the ADP and Southwestern Bell computers without telling WFFL, WFFL's evidence of fraud "[fell] short" because (a) Comdisco's witnesses credibly testified that Comdisco never intended to double-sell the computers and (b) even if Comdisco had disclosed the double-sales, the transaction's course would not have changed. 11/17/04 Tr. at 5. The Court stated that "the evidence is clear that the double sale[s] . . . were

not the result of fraud, but rather were the result of human error and, to some extent, system error." 11/17/04 Tr. at 4. The Court further held:

> "The only troubling factual matter here for me is that once the errors were discovered, they were not communicated to Wells Fargo. But this failure on the part of Comdisco does not amount to a quote, 'cover up,' unquote, as Wells Fargo argues. And I don't believe that it is significant proof of fraud. I also don't believe that if Comdisco had communicated the mistakes, that that [sic] would have changed the course of this transaction in any way. Based on the evidence before me, based on the history of the parties, I have no doubt that the parties would have reached an agreement and would have preserved their arrangement. And, of course, the arrangement was to substantially decrease Wells Fargo's tax liability."

11/17/04 Tr. at 4-5.

The Bankruptcy Court emphasized that its ruling was based on how thoroughly convincing it found Comdisco's witnesses. See 11/17/04 Tr. at 5. The court then summarized that testimony, calling the following determinations "crucial" in resolving the dispute:

> "Patricia Maille . . . was thoroughly credible in my estimation. She explained how, in fact, the double sale occurred, and she said that she was surprised to find it. And she also said, quote, 'we didn't want to double sell,' end quote. And I believe her when she said that."

> "Don Frantz was also entirely credible when he testified that he was quote, 'very upset,' end quote, to discover a double sale. And he was also credible when he said, quote, 'no one ever intentionally double sold or prematurely sold,' end quote, equipment."

> "Bob Snyder was also entirely credible when he said that there was . . . no intent to double sell . . . ."

11/17/04 Tr. at 6-7. Thus, according to the court, "Comdisco, which did not bear the burden of proof, did, in fact, prove by a clear preponderance of the evidence that there was no fraud surrounding this transaction." 11/17/04 Tr. at 3.

The Bankruptcy Court's errors are plain. Its ruling relied on the fact that Comdisco did not intend the double sales when, as noted above, Rule 60(b)(3) does not require actual fraud or intentional misconduct. See Lonsdorf, 47 F.3d at 897. Accord In re Firrone, 272 B.R. 213, 216 (Bankr. N.D. Ill. 2000) ("Rule 60(b)(3) relief does not require a showing of actual fraud . . . . Relief may be granted regardless of whether [the adverse party acted with] evil, innocent or careless, purpose. The issue is whether the adverse party's conduct prevented the [moving] party from fully and fairly presenting his case or defense.") (internal citations and quotation marks omitted). The issue, then, is not whether Comdisco intentionally double-sold equipment or intentionally hid that knowledge from WFFL; the issue is whether Comdisco's actions prevented WFFL from fully and fairly presenting its proof of claim.[5]

Furthermore, the Bankruptcy Court denied relief on the ground that the parties' transaction would not have changed even if Comdisco had disclosed the double sales to WFFL. As noted above, such speculation has no place in a Rule 60(b)(3) motion. See Lonsdorf, 47 F.3d at 897 (stating that "[a] determination of whether the alleged misrepresentation altered the result of the case is unnecessary"). See also Ty Inc. v. Softbelly's Inc., 353 F.3d 528, 536 (holding that "for relief under Rule 60(b)(3) the victim of the fraud or other misconduct need show only that it affected his ability to present his case, not that he would have won had the fraud or misconduct not occurred."). The court's task was to rule on the basis of what *did* happen (i.e.,

---

[5] Tolliver v. Northrop Corp., 786 F.2d 316 (7th Cir. 1986), which Comdisco cites, urging this court to simply "let things be," see Appellee's Br. at 11 (citing Tolliver, 786 F.2d at 319), actually compels this conclusion: "The decision under Rule 60(b) is discretion piled on discretion and . . . doubly discretionary decisions stand *unless* the judge was very far off base—*if the judge relied on forbidden factors* or omitted to consider some important relevant factor." Tolliver, 786 F.2d at 319 (emphases added). Here, the Bankruptcy Court relied on the forbidden factor of intent in finding fraud, misrepresentation, or misconduct.

-15-

Comdisco was not truthful and WFFL choose not to defend its proof of claim), not on the basis what *might* have happened.

In sum, the Bankruptcy Court erred by applying an erroneous view of the law to WFFL's motion. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990) ("A . . . court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law . . . ."). The record before this Court indicates that WFFL *did* satisfy the requirements for relief under Rule 60(b)(3).

First, WFFL filed a valid proof of claim in Comdisco's bankruptcy proceedings. Second, the evidence showed that Comdisco engaged in fraud, misrepresentation, or misconduct. Even if the Bankruptcy Court's finding that Comdisco's actions did not constitute *fraud* was reasonable, the court's failure to find at least *misconduct* or *misrepresentation* was not.[6] The court made an explicit factual finding that Comdisco double-sold the ADP and Southwestern Bell computers and did not tell WFFL; it even deemed this fact "troubling." 11/17/04 Tr. at 5. Moreover, WFFL alleged that Comdisco, even after discovering the double sales, continued to send WFFL location reports falsely indicating that WFFL had good title to the computers. Comdisco has never denied this allegation, and this Court must accept WFFL's undenied factual allegations as true. *This* evidence amounts to misconduct or, in the very least, misrepresentation. See Firrone, 272 B.R. at 215 (Bankr. N.D. Ill. 2000) ("Rule 60(b)(3) 'misconduct' includes withholding information that one is obliged to disclose."); see also Lonsdorf, 47 F.3d at 897 ("[Rule] 60(b)(3) applies to both intentional and unintentional misrepresentations.").

---

[6] Comdisco argues that the Bankruptcy Court found no evidence of misrepresentation or misconduct, in addition to fraud, but the record does not bear out this assertion.

This Court recognizes that the parties argued the motion before the Bankruptcy Court using the term "fraud" far more than the terms "misconduct" or "misrepresentation." WFFL, as the movant, is especially condemned for appearing to limit the bulk of its argument to simply "fraud," and for repeatedly stating its belief that Comdisco committed "fraud" without also stating, just as consistently, that Comdisco engaged in "misrepresentation" or "misconduct" as well. Indeed, it is likely that the Bankruptcy Court limited the August 2004 evidentiary hearing to the question of, simply, "fraud" because of the parties' language. See, e.g., 11/17/04 Tr. At 3 (Judge Black stating that "the factual question of fraud back in 1994 was the only issue for trial.").

Despite the parties' frequent use of the word "fraud," this Court finds that the Bankruptcy Court was sufficiently on notice that WFFL was moving for relief on the basis of fraud, misrepresentation *or* misconduct. See 1/22/04 Tr. at 21 (Counsel for WFFL stating that "Wells Fargo has set forth in its motion a basis on which it believes it was *misled*, defrauded in fact by this debtor . . .") (emphasis added); id. at 30 (Counsel for WFFL stating that "[Rule] 60 . . . talks about the discovery of fraud *or misrepresentation*") (emphasis added); 8/2/04 Tr. at 34 (Counsel for WFFL stating that "even though we believe that fraud very definitely occurred here . . . the definition in 60(b)(3) is broader than [fraud]—includes misrepresentation and misconduct"). Finding that "the double sales were not the result of fraud," then, did not end the Bankruptcy Court's task. 11/17/04 Tr. at 4. Cf. United States v. One (1) Douglas A-26B Aircraft, 662 F.2d 1372, 1374-75 (11th Cir. 1981) ("By focusing on the question of fraud, the [lower] court failed to consider whether the evidence presented by appellant would support a claim of innocent misrepresentation by [appellees], and if so, whether Rule 60(b) affords relief for such a claim.").

Third, WFFL established that Comdisco's actions prevented WFFL from fully litigating its proof of claim and from enjoying the depreciation deductions that the parties designed their transaction to create. Indeed, the loss of those tax benefits triggered the Indemnity Agreement that would have provided WFFL a basis for pursuing its claim in the bankruptcy proceedings. A witness for Comdisco even testified that, if a double sale deprived an investor of good title, the investor would necessarily forgo tax benefits that were the purpose of the transaction. This "mistake" and "terrible" and "embarrassing" turns of events would be Comdisco's "fault" and would need to be remedied. Test. of Robert Snyder, 8/3/03 Tr. at 198. WFFL need not show, as Comdisco argues, that Comdisco's mistakes "would have been outcome-determinative in WFFL's IRS audit" or that the double sales "were the proximate cause of the IRS audit or settlement." Appellee's Br. at 15. Rule 60(b)(3) requires WFFL only to show that Comdisco's concealment prevented WFFL from fully and fairly presenting its claim.[7]

Thus, this Court concludes that WFFL has satisfied, by clear and convincing evidence, the three requirements for reconsideration of the disallowance of its claim pursuant to Rule 60(b)(3). As a final matter, Comdisco argues that WFFL's position equates breach of contract with fraud or misconduct. The Bankruptcy Court made a similar remark: "The evidence may disclose a breach of various contractual duties, but that's far short of proving fraud." 11/17/04 Tr. at 5. Their observation would ring true, except that WFFL's undenied allegations point to more than a breach of warranty or representation. They point to an effort by Comdisco to

---

[7] Comdisco argues that its "two isolated mistakes" long ago were minuscule in light of the enormity of the parties' transaction. Appellee's Br. at 12-13. This argument misses the point of Rule 60(b)(3), which is to protect the fairness of judicial proceedings. See Lonsdorf, 47 F.3d at 897.

continue to mislead WFFL as to its title in the ADP and Southwestern Bell computers—an effort WFFL has shown affected the fairness of the parties' bankruptcy proceedings. These allegations, which the Court must except as true, are sufficient for relief under Rule 60(b)(3).

**V.     CONCLUSION**

For the foregoing reasons, the judgment below is reversed. This case is remanded to the Bankruptcy Court for further proceedings consistent with this opinion.

                                              Enter:

                                              /s/ David H. Coar
                                              David H. Coar
                                              United States District Judge

Dated: **May 30, 2006**